DA 13-0105 and DA 13-0106

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 235N

IN THE MATTER OF:

E.Z.C. and E.B.C.,

    Youths in Need of Care.

| | |
|---|---|
| APPEAL FROM: | District Court of the Sixth Judicial District, In and For the County of Park, Cause Nos. DN 12-04 and DN 12-05 Honorable Laurie McKinnon, Presiding Judge |

COUNSEL OF RECORD:

    For Appellant:

        Lucy Hansen; Hanson Law Practice; Missoula, Montana

    For Appellee:

        Timothy C. Fox; Montana Attorney General; Katie F. Schulz, Assistant Attorney General; Helena, Montana

        Brett D. Linneweber, Park County Attorney, Livingston, Montana

Submitted on Briefs: July 24, 2013

Decided: August 20, 2013

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     C.C. (Father) appeals from orders of Montana's Sixth Judicial District Court, Park County, terminating his parental rights to his two children, E.Z.C. and E.B.C.  We affirm both orders in this consolidated appeal.

¶3     E.Z.C. and E.B.C.'s mother, J.C. (Mother), was arrested on January 18, 2012, after law enforcement officers searched their home and discovered methamphetamine and drug paraphernalia.  On January 25, 2012, the State filed a petition for emergency protective services, adjudication, and temporary legal custody of E.Z.C. and E.B.C.  Mother's parental rights were terminated on October 11, 2012, and affirmed by this Court's decision in *In re E.Z.C.*, 2013 MT 123, 370 Mont. 116, 300 P.3d 1174.  Father was incarcerated in Washington when the proceedings commenced, but returned to Montana following his release from jail on February 6, 2012.  The District Court held a hearing on the State's petition on February 28, 2012.  Father attended the hearing and stipulated to his children being adjudicated as youths in need of care and to granting temporary custody to the State.

¶4     The State prepared a treatment plan and Father received it on June 26, 2012.  The District Court suggested additional requirements, and all parties agreed to the revised

2

treatment plan at an August 7, 2012 hearing. Father's treatment plan addressed housing, visitation, mental health, chemical use, and employment. On October 22, 2012, the District Court held a review hearing. The State filed a petition to terminate Father's parental rights on November 19, 2012.

¶5      The District Court held a hearing on the termination petition on January 3, 2013. Detective Tim Barnes of the Park County Sheriff's Office testified that during a traffic stop of Father on August 16, 2012, he discovered items commonly used to manufacture methamphetamine in Father's vehicle. Detective Barnes also testified that Father had assisted in the development of a methamphetamine lab that Detective Barnes had uncovered in a search on September 17, 2012. The lab was located in a shed situated within 15 feet of a house occupied by children. Next, Jacqui Poe with the Department of Public Health and Human Services (DPHHS), Child and Family Services Division, testified that Father had not exhibited a change in attitude and remained at square one with respect to actual progression on his treatment plan. Poe stated that Father often tested positive for methamphetamine, marijuana, and alcohol, and frequently refused testing. Poe further testified that Father did not have an appropriate home for the children, failed to maintain weekly contact, did not adhere to the visitation schedule, failed to maintain steady employment, missed many of his anger management classes and attended while under the influence of drugs, and failed to demonstrate that he could provide for the basic needs of his children. Rie Hargraves with Community Health Partners testified as to Father's participation in parenting classes and Jana Lehman, a

counselor at Southwest Chemical Dependency Center verified that Father was enrolled in outpatient treatment.

¶6　On January 11, 2013, the District Court issued orders terminating Father's parental rights to E.Z.C. and E.B.C. Relying on the testimony presented at the termination hearing, the District Court ultimately concluded that Father had not successfully completed the court-ordered treatment plan and that the conduct making him unfit to parent E.Z.C. and E.B.C. was unlikely to change within a reasonable amount of time.

¶7　Father argues on appeal that the District Court erred in terminating his parental rights because the District Court gave Father insufficient time to complete his treatment plan and the evidence did not support the District Court's conclusion that Father's conduct was unlikely to change within a reasonable period of time.

¶8　Pursuant to § 41-3-609(1)(f), MCA, a court may terminate parental rights to a child who is adjudicated as a youth in need of care if "an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful" and "the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time." Courts must first determine whether DPHHS has provided an "appropriate" treatment plan. *In re D.B.*, 2012 MT 231, ¶ 19, 366 Mont. 392, 288 P.3d 160. No bright-line test exists to assist courts in determining whether a treatment plan is appropriate; instead, courts consider various factors, including whether the parent was represented by counsel, whether the parent stipulated to the plan, and whether the plan addressed the particular problems facing both the parent and the child. *In re D.B.*, ¶ 19. Father's arguments that the timelines in the treatment plan were not

4

appropriate were waived when he agreed to the plan's goals and tasks without objection. *See In re H.R.*, 2012 MT 290, ¶¶ 10-11, 367 Mont. 338, 291 P.3d 583. Nevertheless, the record demonstrates that Father was represented by counsel, stipulated to the treatment plan, and the plan took into consideration the particular problems facing Father and his children. Father fails to point to any specific task that carried an unreasonable timeframe, nor can he demonstrate that the District Court misinterpreted the timelines set forth in the plan.

¶9 The determination of whether a parent's behavior will change within a reasonable amount of time requires the District Court to primarily consider the physical, mental, and emotional needs of the child. *In re D.B.*, ¶ 25; § 41-3-609(2)-(3), MCA. A court's foremost concern is the child's best interests when evaluating whether to terminate parental rights. *In re D.B.*, ¶ 25. The record contains substantial evidence to support the District Court's conclusion that Father's behavior was unlikely to change within a reasonable amount of time. Father had an extensive history of chemical dependency problems and continually failed to comply with drug testing requirements. When he did appear for testing, he rarely passed. During the pendency of the treatment plan, Father made little if any progress towards being able to provide for the basic needs of his children, and failed to comply with many of the core requirements of the treatment plan that were established to address these inadequacies.

¶10 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. With respect to the issues in this case involving judicial discretion, the District Court

5

clearly did not abuse its discretion. The District Court's factual findings are supported by substantial evidence and the legal issues in this case are controlled by settled Montana law, which the District Court correctly interpreted.

¶11 Affirmed.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS